Adrin L. MANLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00318–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 30, 2000.

Decided Aug. 31, 2000.

Connie Mitchell, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Adrin L. Manley appeals from his conviction for murder. He entered a plea of not guilty, and a jury trial was held. The jury found him guilty, and assessed his punishment at imprisonment for ninety-nine years and a fine of $10,000.00. The court sentenced him in accordance with the jury's verdict.

On appeal, Manley contends that the trial court erred in permitting his motion for new trial to be denied by operation of law, that he suffered ineffective assistance of counsel, that a defense witness' testimony was erroneously excluded, and that the court erred in admitting an unrecorded oral statement made during a custodial interrogation.

On July 17, 1996, Manley was riding in a vehicle with James Hughey, Gene Paxton, and Tory Blair in Texarkana, Texas. All three men testified that when the car approached a crowd of people on Blanton Street, Manley rose up out of the vehicle through the passenger's side window, leaned over the roof of the car, and said, "What's up, Cuz?" Roderick Adams then stepped forward and raised his arms, and multiple gunshots were fired. While all three men testified that they heard the gunshots and that Manley had a weapon, Hughey further testified that it was Manley who fired the shots. A .25 caliber semiautomatic Raven pistol was found at the home of Manley's mother (where Manley also resided). That pistol was determined by ballistics testing to be the weapon that killed Roderick Adams.

In his first point of error, Manley contends that the trial court erred by not granting his motion for new trial. The granting or denying of a motion for new trial lies within the sound discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). The reviewing court must decide if the trial court's decision was arbitrary or unreasonable, but it may not substitute its own judgment for that of the trial court. *Id.*

Manley contends the court abused its discretion in not granting his motion because favorable, material evidence was discovered after the conclusion of the trial. *See* Tex.Code Crim. Proc. Ann. art. 40.001 (Vernon Supp.2000). In order for a motion for new trial to be properly placed before the trial court for consideration, it must be timely filed and presented. *See* Tex.R.App. P. 21.4(a), 21.6. Here, there is no evidence that this motion was presented to the trial court. Since Manley failed to present the motion, the court could not have abused its discretion in failing to grant it. *Gibbs v. State*, 819 S.W.2d 821, 836 (Tex.Crim.App.1991); *Gray v. State*, 980 S.W.2d 772, 773–74 (Tex.App.-Fort Worth 1998, no pet.), *citing Musgrove v. State*, 960 S.W.2d 74, 75 (Tex.Crim.App. 1998); *see also Carranza v. State*, 960 S.W.2d 76 (Tex.Crim.App.1998).

Even if we assume Manley's motion for new trial was properly presented to the trial court, it still cannot be said that the court abused its discretion by denying it. To obtain a new trial based on newly discovered evidence, a defendant must show that: (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the evidence was not due to his want of due diligence; (3) the evidence was probably true and would probably bring about a different result in another trial; and (4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching. *Moore v. State*, 882 S.W.2d 844, 849 (Tex.Crim.App.1994). Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution. *Drew v. State*, 743 S.W.2d 207, 225–26 (Tex.Crim. App.1987).

Adams was murdered on July 17, 1996. Manley was convicted and sentenced for this offense on September 10, 1998. Attached to his motion for new trial was an affidavit prepared by his counsel which states that five days subsequent to Manley's conviction and sentence, counsel received a telephone call from a woman who identified herself only as Ramona, and who claimed to be the girlfriend of Christopher Foate, one of the State's key witnesses at Manley's trial. According to the affidavit, Ramona stated that she had information bearing on the Manley case that she would provide, but that she would not identify herself further, out of fear for her safety. The affidavit further states that Ramona provided a letter allegedly written by Foate that Foate had sent to her from prison. A copy of a portion of the letter was attached to the affidavit. In it, the writer stated, "[Y]ou might not belive [sic] me but I didn't rob that store but I did kill that nigga [sic] in Texas but don't you tell nobody. Keep that to your self [sic]." The letter was postmarked July 27, 1998.

This letter is the newly discovered evidence on which Manley relies for a new trial. He argues that this letter is a confession from Foate for the murder of Adams, and that based on this evidence, the court should have granted a new trial. However, nowhere in this letter does Foate state that the murder to which he is referring is that of Adams, nor does he give any details of the alleged killing that would lead the trial court to believe that Foate was speaking of Adams' murder. The letter itself does not exonerate Manley from guilt. In order to obtain a new trial, Manley would be required to show that this letter meets all four prongs of the above-stated test. He has failed to meet this burden. He has not shown that Foate's confession would probably bring about a different result at another trial

and that it is competent, and not merely impeaching, evidence. *See Bacey v. State,* 990 S.W.2d 319, 333 (Tex.App.-Texarkana 1999, no pet.). This point of error is overruled.

Next, Manley contends that he did not receive effective assistance of counsel during the punishment phase of his trial. Specifically, Manley claims that his trial counsel was ineffective for failing to object to testimony concerning Manley's criminal history and his gang affiliation. Manley claims that this testimony was inadmissible and therefore should have been objected to, because the State never introduced any adjudications for the alleged offenses. He argues that according to the Texas Code of Criminal Procedure, Article 37.07, only adjudicated offenses punishable by incarceration and occurring after January 1, 1996, may be introduced into evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a), (h) (Vernon Supp.2000).

The standard of testing all claims of ineffective assistance of counsel requires the appellant to show by a preponderance of the evidence both that (1) counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986) (adopted the two-pronged test set out in *Strickland* ). In other words, the appellant must prove both a deficiency and prejudice resulting from that deficiency. *See Garrett v. State,* 998 S.W.2d 307, 312 (Tex.App.-Texarkana 1999, pet. ref'd, untimely filed). An isolated failure to object to improper evidence does not necessarily constitute ineffective assistance of counsel. *See Bridge v. State,* 726 S.W.2d 558, 571 (Tex. Crim.App.1986). The failure to object to admissible evidence cannot be ineffective assistance. *Burruss v. State,* 20 S.W.3d 179, 187–88 (Tex.App.-Texarkana 2000, pet. filed).

Manley contends that his trial counsel was deficient in not objecting to testimony concerning Manley's alleged gang involvement and his prior criminal violations. Manley complains about two witnesses that the State called to testify during the punishment phase. One such witness was Preston Long, a detective with the gang intelligence unit, who testified that while doing surveillance, he "witnessed several ... criminal violations that included Mr. Manley and his fellow gang members." The other witness was Bill Anderson, a probation officer, who testified that he had researched Manley's prior juvenile activity, in order to prepare for the certification and transfer of Manley from juvenile authority to adult authority, and he discovered the following:

> In Arkansas, Adrian [sic] [Manley] has eleven arrests. Half a dozen of those were for battery, for assaultive offenses. He's currently being certified on two felony charges over there of battery and aggravated robbery. That's pending. Now, in Texas, he was arrested with— His only history in Texas was being involved in another shooting where his brother shot a man in the chest in the street in Texarkana. But Adrian [sic] [Manley] was originally charged with attempted murder along with his brother. I also certified his brother on that charge and he got time in the Texas State Penitentiary. Adrian [sic] [Manley] was not prosecuted for that, but he was arrested for another attempted murder.

Manley contends that his trial counsel was ineffective since he failed to object to any of this testimony.

Based on his argument presented for appeal, Manley apparently believes that the State was required to introduce court-ordered adjudications in order for the above-referenced testimony to be admissible under Article 37.07; however, this article clearly allows for evidence other than

adjudications to be introduced during the punishment phase of trial. Article 37.07 states that evidence is admissible

> as to any matter that the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a). The testimonies of both Long and Anderson regarding Manley's extraneous crimes and bad acts are admissible. *See Cain v. State*, 976 S.W.2d 228, 236–37 (Tex. App.-San Antonio 1998, no pet.); *see also Rodriguez v. State*, 975 S.W.2d 667, 686–87 (Tex.App.-Texarkana 1998, pet. ref'd). Therefore, counsel could not have been ineffective for failing to object. *Burruss*, at 187–88. This point of error is overruled.

 Manley's next contention is that the trial court erred by prohibiting a defense witness from testifying as to a statement made by a third party. During the guilt/innocence phase of trial, the defense called Rene Scott to the stand. On direct examination, she was asked the following question:

> Q. Ms. Scott, have you ever heard anybody else take blame for the murder of Roderick Adams?
>
> A. Yes sir.

At this point, the State objected on the basis of hearsay, and the court sustained the objection. Manley argued, unsuccessfully, that this evidence qualified as an exception to the hearsay rule as a statement against interest. According to Texas Rule of Evidence 803(24), a statement against interest is:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX.R. EVID. 803(24). However, as this rule, and the cases interpreting this rule, have stated, corroborating circumstances must be shown that prove the trustworthiness of the statement, and the party seeking the admission has the burden to make this necessary showing. *Id.; Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App. 1994); *White v. State*, 982 S.W.2d 642, 648 (Tex.App.-Texarkana 1998, pet. ref'd). Whether this burden was satisfied lies within the sound discretion of the trial court, and appellate review of a trial court's decision to exclude a hearsay statement under Rule 803(24) is limited to whether the lower court abused this discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App.1994).

 In order to determine if the necessary corroboration has been shown, a trial court should consider a number of factors: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant, (2) whether the declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement was made, and (6) the existence of independent corroborative facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex.Crim.App.1999).

Manley failed to show any corroborating circumstances. The record is void of any evidence of any of the above-listed factors. In fact, Manley failed to even establish who made the statement, where it was made, or when it was made. All that is in the record is that the objection was made, and Manley attempted to argue that it was a statement against interest. This mere declaration does not satisfy the requirement that corroborating circumstances must show trustworthiness, and we cannot find that the trial court abused its discretion by excluding the evidence. This point of error is overruled.

 Finally, Manley complains that the trial court erred by admitting an unrecorded, oral statement, made by him during a custodial interrogation. When Manley made the oral statement in question, he was in custody for an unrelated offense. On July 30, 1996, Manley was in custody on a charge of aggravated robbery, and he was interviewed concerning this charge. Subsequent to the interview, a search warrant was issued to search the home of Manley's mother, Janice Manley, where Manley also resided. During this search, a .25 caliber semiautomatic Raven pistol was recovered. A ballistics test was run on this weapon, and the police discovered that it was the weapon that was used to murder Adams weeks before. On July 31, 1996, Manley was brought back to the police station for another custodial interrogation, this time concerning the murder. This interview was not recorded in any manner. During the course of this interview, Manley allegedly told Sergeant Mark Lewis when he bought the gun, where he kept the gun, and when he gave the weapon to Demond Watson to use in the unrelated aggravated robbery.

Generally, unrecorded oral statements such as these are not admissible. According to Article 38.22, § 3(a):

No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding. . . .

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.2000). However, Article 38.22, § 3(c) states that:

Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (Vernon Supp.2000). The example given of recovering property as a result of the statement is not the exclusive means of corroborating an oral statement. *Gunter v. State,* 858 S.W.2d 430, 448 (Tex.Crim. App.1993). "While some case law indicates that the oral confession or statement must lead to the recovery of items or information before the oral confession or statement is admissible, the statute plainly requires only that the statement assert facts or circumstances that are found to be true and which conduce to establish the guilt of the accused." *Id., citing Port v. State,* 791 S.W.2d 103, 106 (Tex.Crim.App. 1990).

The State contends that since the police report filed by Lewis indicated that Watson's "subsequent statement substantiated [Manley's] statement regarding his possession of the weapon for the robbery, including his use of the .25 provided by Adrian Manley," this is corroboration and allows the entire statement to be admissible. We disagree. The only "corroboration" of Manley's statement that was entered into the record was Lewis' police report. Watson did not take the stand, and his statement was not entered into evidence. This is not sufficient corroboration to say that the asserted facts or circumstances were found to be true. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(c). Therefore, the trial court erred by admitting Manley's unrecorded oral statement.

 However, this does not end our inquiry. "Rule 44.2(a) provides that error

in the admission of evidence does not require reversal if the reviewing court determines beyond a reasonable doubt that admission of the evidence did not contribute to the conviction or punishment." *Hernandez v. State*, 13 S.W.3d 78, 83 (Tex. App.-Texarkana 2000, no pet.). Here, the three other occupants of the car testified that Manley rose up out of the vehicle through the passenger's window, spoke to Adams saying, "What's up, Cuz," and then shots were fired. One of the three occupants of the car further testified that he was certain it was Manley who fired the shots. Additionally, the weapon that killed Adams was recovered at the house where Manley resided. The fact that Manley's inadmissible statement was presented to the jury, which indicated when he bought the weapon, where he sometimes stored the weapon, and to whom he loaned it two weeks after the murder did not contribute to his conviction or punishment. The error was harmless, and Manley's fourth point of error is overruled.

The judgment is affirmed.