NO. 07-01-0255-CR


NO. 07-01-0257-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 22, 2002



______________________________




WILLIAM ROBERT FORD, AKA WILLIAM LOGHRY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NOS. 41,419-E, 42,038-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 In three issues, appellant William Robert Ford aka William Loghry challenges his
convictions of aggravated assault and aggravated assault with a deadly weapon, as well
as the resulting concurrent sentences of 40 years confinement in the Institutional Division
of the Department of Criminal Justice. The cases were consolidated for jury trial, and the
punishment was also assessed by the jury. Finding no reversible error, we affirm the
convictions.

 In his three issues, appellant claims error on the part of the trial judge in 1) allowing
a statement made by him while he was in a police vehicle into evidence, 2) not allowing
him to cross-examine a State's witness with a misdemeanor offense after the State had
opened the door, and 3) allowing certain tattoo markings contained in a penitentiary packet
into evidence during the punishment phase that were not relevant and were highly
prejudicial to him.

 On October 11, 1999, shortly before midnight, appellant entered the Circus Room,
a bar on Sixth Street in Amarillo and demanded that the bartender give him money from
the cash register. Because appellant had been a patron, the bartender asked him if he
was kidding. Appellant responded by holding a knife to the bartender's throat. Three
other customers were in the bar and aided in subduing appellant, and one received some
cuts from appellant's knife. During the scuffle, the bartender called the police. Upon their
arrival, the police handcuffed appellant and put him in a police car. While the police were
taking statements from the witnesses, appellant escaped, but was later apprehended
again. 

 In his first issue, appellant complains of the admission into evidence of an oral
statement made by him while he was being transported to the Potter County Jail. He
argues the statement was made while he was arrested, handcuffed, and in the custody of
the police and that it was made prior to being informed of his constitutional rights or
receiving Miranda warnings. This sequence of events, he contends, violated his
constitutional rights and further, violated the requirements of article 38.22 of the Code of
Criminal Procedure. In supporting this argument, he argues that it is established that the
prosecution may not use statements stemming from custodial interrogation of a defendant
unless procedural safeguards secure his right against self-incrimination. Miranda v.
Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Article 38.22
of the Code of Criminal Procedure provides that an oral statement made as a result of
custodial interrogation may not be used against an accused unless an electronic recording
is made, he has received a warning explaining his legal rights, and he has knowingly,
intelligently, and voluntarily waived the rights described in the warning. Tex. Code Crim.
Proc. Ann. art. 38.22 § 3 (Vernon Supp. 2002). However, nothing in the article precludes
the admission of a statement that is res gestae of the arrest or the offense, a statement
that does not stem from custodial interrogation, or a voluntary statement whether or not
it is the result of custodial interrogation. Id. § 5 (Vernon 1979).

 In responding to appellant's contentions, the State initially argues that no error was
preserved for appellate review by the trial court ruling on a motion in limine and appellant
did not obtain a trial court evidentiary ruling, either at the pretrial hearing or at trial. 
Furthermore, it argues, there was never a specific objection that the oral statement should
not be admitted because of a violation of article 38.22. In that respect, we note that
appellant filed a motion in limine with respect to any oral statements made by him on the
basis that any custodial statements made without constitutional warnings would be in
violation of U.S. and Texas constitutional provisions. However, at the hearing on the
motion, appellant made reference to article 38.22.

 At the hearing, Police Officer Billy Heinson testified he arrested appellant and
placed him in his patrol car. Appellant later escaped from the car, Officer Heinson
recaptured him, and then delivered him to Officer Jordan. Heinson did not admonish
appellant as to his constitutional rights, nor did he attempt to ask him any questions.

 William Jordan, at the time of the hearing a former police officer, drove appellant
to the Potter County Jail. He did not admonish appellant of his constitutional rights at that
time. However, Jordan averred, appellant voluntarily said that a black man had threatened
him and forced him to commit the robbery. At some point, Jordan asked, if appellant's
story was true, why he did not go into the bar and call the police. Appellant's reply was
that the man was waiting right outside the door and if appellant called the police, the man
would have hurt his family and possibly burned down his house. After appellant was
booked into jail, Jordan read appellant his rights and gave him an opportunity to make a
written statement. However, at that time, appellant invoked his right to counsel and
refused to make a statement. Jordan admitted that appellant was under arrest and
handcuffed at the time he was transported to the jail.

 At the conclusion of the hearing, the trial judge opined, "[t]hey are just spontaneous
statements by the Defense [sic] - - by the Defendant. Mr. Schofield, if you're asking for a
ruling on that, I will rule they are admissible. He wasn't - - it was not being done under
questioning. I mean . . . They will come in." In response to a question whether the motion
in limine was denied, the court replied that it was. Later, during the trial, when Jordan was
asked if appellant made any statements to him, appellant re-urged what he termed as his
"objection that's been previously made to the Court at a prior hearing." Then, the following
colloquy occurred at the bench:

 Mr. Schofield: I had objected to any oral statements made by the Defendant. 
He had previously testified that he was taking the defendant uh-to the jail,
and the defendant said that there was a person that made him commit the
offense of robbery. He was uh-you ruled that they were res gestae.


 The Court: Yeah, okay.


 Mr. Schofield: I just want to re-urge my Motion in Limine.


 The Court: Okay. It's overruled.

 

At the close of the evidence, appellant requested, and was granted, an instruction on the
law of duress based upon the statement appellant made to Jordan.

 As we have noted, the State argues that appellant did not make an evidentiary
objection on the basis of article 38.22 or obtain a ruling from the trial court on that basis. 
However, appellant mentioned article 38.22 in the course of the pretrial hearing and, in
addition to overruling the motion in limine, the court ruled the statement would be
admissible. Thus, although the record is not completely clear, we will assume, arguendo,
that an article 38.22 objection was made and the court ruled on it.

 It is undisputed that appellant was in custody at the time of his oral statement and
that no electronic recording was made of the statement. It is also undisputed that
appellant had not been read his rights at the time he made the statement. Even so, there
is nothing in the record to indicate that Jordan took any actions or said anything likely to
elicit appellant's statement that he was forced to commit the robbery.

 In Longoria v. State, 763 S.W.2d 597 (Tex.App.--Corpus Christi 1988, no pet.), a
burglary case, the defendant argued the trial court erred in admitting three statements
made by him at the time of his arrest and before any constitutional or statutory warnings
had been given. In response to a police officer's question, the defendant stated that a box
he was carrying contained groceries. However, the police officer noticed the box did not
appear to contain groceries, and the defendant then volunteered that the box contained
radios. When the officer told the defendant that he thought he, the defendant, was lying,
he responded with a third statement, "[d]on't do this to me, man, don't do it." The court
found that the second and third statements were made voluntarily and not as a result of
interrogation. In this instance, appellant's first statement asserting that he was forced to
commit the offense was clearly spontaneous and voluntarily made. Appellant's second
statement is similar in nature to that before the court in Longoria and, in both cases, the
officer's skeptical remark that provoked the responses did not transgress constitutional or
statutory bounds. 

 With regard to the second statement, even assuming arguendo that Jordan's
question was likely to provoke an incriminating response, the statement was merely
cumulative of the first statement, which was clearly admissible. Hence, there was no
material harm to appellant. Further, even if admitting the second statement was
erroneous, a criminal judgment need not be reversed if, beyond a reasonable doubt, the
error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2. See also
Manley v. State, 28 S.W.3d 170, 176-77 (Tex.App.--Texarkana 2000, pet. ref'd). In this
case, several witnesses testified that appellant had been a customer of the bar. Two
witnesses positively identified appellant as the robber and he was also held down by
several of the patrons until the police arrived. The admission of the second statement,
even if it was error, did not contribute to appellant's conviction or punishment. Appellant's
first issue is overruled.

 In his second issue, appellant claims the trial court should have allowed him to use
a misdemeanor offense in cross-examining the State's witness Eskippa Bluejacket. 
Bluejacket was one of the witnesses who identified appellant as the robber and helped
detain appellant until the police arrived. In its direct examination, the State had asked
Bluejacket if he was armed when he tried to take the knife away from appellant. Bluejacket
denied that he was armed at the time. During cross-examination, the following colloquy
occurred at the bench:

 Mr. Schofield: I would normally -- normally blurt this, but in that we have
already gone into this in the other proceeding, I assumed the Court would
get a little upset with me if I did. This person has a previous conviction for
unlawfully carrying a concealed weapon. I do know that is not a crime of
moral turpitude. However, the State has asked the question: Were you uh 
-- carrying a concealed weapon? I intend to ask him -- well, they opened the
door.


 Mr. Coyle: I'm sorry. Go ahead.


 Mr. Schofield: I intend to ask him the question: Have you not carried -- have
you not been convicted of carrying a concealed weapon in the past?


 The Court: Okay.

 

 Mr. Coyle: Just -- if I can be heard on this.


 The Court: Uh-huh.


 Mr. Coyle: First of all, his conviction is unlawfully carrying a weapon, not
carrying a concealed weapon. Secondly, uh -- what's the date on that? 
Okay. That occurred in 1996. I asked the witness, were you armed on the
night that this happened? I didn't say, were you carrying a concealed
weapon, and I didn't say have you ever carried a gun? I said, were you
armed when you went after this guy. That does not open the door to any
prior convictions this man has for a misdemeanor UCW. If I said, you know,
are you in the habit of carrying or blah, blah, blah, you know, that might open
the door, but I didn't do that.


 The Court: I don't think that I would let that come in, Mr. Schofield.


 Mr. Schofield: Your Honor, just to preserve my particular Bill of Review
issue, if I may have that as a Bill of Review exhibit.


 Mr. Coyle: Yeah, we have no objection for that purpose.


 The Court: Okay.


 Mr. Coyle: And we will even stipulate that that's him. You know, just for any
appellate purposes. Okay. 


 The Court: All right.


 Mr. Schofield: I would tender that question to -- that I would be asking that
question to the -- to the witness at this point, have you been convicted of a
concealed weapon on those specific dates. Well, under that cause number.


 The Court: This is not a concealed weapon.


 The Court: I mean convicted of unlawfully carrying a weapon.


 The Court: All right. Uh -- I will deny your request. Sustain the State's
objection that cannot come in, but I will receive this for part of your bill.


 Mr. Schofield: Okay.


 The Court: Okay.


Appellant recognizes that Rule 609 of the Rules of Evidence provides that a conviction
may only be used to attack the credibility of a witness if the crime was a felony or involved
moral turpitude and the court determines its probative value outweighs its prejudicial effect. 
See Tex. R. Evid. 609(a). He also admits that the crime he seeks to use for impeachment
purposes was neither a felony nor an offense involving moral turpitude. However, he
contends, because of the nature of the State's question, he had a right to clarify any "false
impression" left with the jury by the question.

 If a witness creates a false impression of a past criminal history, he has opened the
door to otherwise irrelevant prior conviction evidence and opposing counsel may expose
any falsehoods. Otero v. State, 988 S.W.2d 457, 458-59 (Tex.App.--Houston [1st Dist.]
1999, pet. ref'd); Royal v. State, 944 S.W.2d 33, 36 (Tex.App.--Texarkana 1997, pet. ref'd). 
However, this exception is narrowly construed and, to open the door to the use of such
evidence, the witness must do more than merely imply he abides by the law but must
convey the impression that he has never committed a crime. Delk v. State, 855 S.W.2d
700, 704 (Tex.Crim.App.), cert. denied, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432
(1993); Lewis v. State, 933 S.W.2d 172, 179 (Tex.App.--Corpus Christi 1996, pet. ref'd). 
The rebuttal evidence may never exceed the scope of the question posed or the answer
given. Vetero v. State, 8 S.W.3d 805, 815 (Tex.App.--Waco 2000, pet. ref'd).

 Here, Bluejacket's answer that he was not armed at the time of the incident, without
further elaboration, was not sufficient to leave the impression that he never carried a
weapon either legally or illegally, that he was opposed to the use of weapons, or that he
had never committed a crime. Thus, the State had not opened the door to the use of the
conviction on cross-examination. The trial court did not err in refusing to allow appellant
to use the conviction. Appellant's second issue is overruled.

 In his third and final issue, appellant challenges the admission during the
punishment phase of extraneous material contained in a penitentiary packet that certified
a prior conviction of appellant. The material in question was on the last page of State's
Exhibit No. 8 under the "Scars & Marks" portion of the fingerprint record. It stated that
appellant had an identifying tattoo containing the phrase "King of Death." At trial,
appellant unsuccessfully complained that the tattoo information was not necessary to
identify him with that particular penitentiary packet and was a type of surplusage that was
prejudicial enough to deny him due process and a fair and impartial trial. In this appeal,
he also complains that the reference is double hearsay and indicates a lack of
trustworthiness.

 In supporting his proposition, appellant cites and relies on an explication in Moore
v. State, 826 S.W.2d 775 (Tex.App.--Houston [14th Dist.] 1992, pet. ref'd). In that case, the
court opined that the "threshold test of admissibility of any extraneous offense or
transaction is that it be relevant to a material issue in the case and that the probative value
of the evidence outweigh its inflammatory or prejudicial potential." Id. at 777. He reasons
that under that test, the words "King of Death" on the tattoo were not relevant and only
served to inflame the minds of the jury.

 At trial, appellant did not raise a hearsay objection, nor did he raise a lack of
reliability objection. By not doing so, he has failed to preserve those questions for
appellate review. Gauldin v. State, 683 S.W.2d 411, 413 (Tex.Crim.App. 1984), overruled
on other grounds by State v. Guzman, 959 S.W.2d 631 (Tex.Crim.App. 1998). However,
giving a liberal construction to appellant's trial objection, it can be said that his objections
were sufficient to raise a relevancy question and whether the evidence's prejudicial value
exceeded its probative value.

 Relevant evidence is defined as any evidence having a tendency to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence. Tex. R. Evid. 401. 
However, even if relevant, the evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403.

 In considering this question, we note that article 37.07 of the Code of Criminal
Procedure provides:

 Sec. 3. Evidence of prior criminal record in all criminal cases after a finding
of guilty:


 (a)(1) Regardless of the plea and whether the punishment be assessed by
the judge or the jury, evidence may be offered by the state and the
defendant as to any matter the Court deems relevant to sentencing,
including but not limited to the prior criminal record of the defendant, his
general reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 403, Texas Rules of Evidence, any other
evidence of an extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant or
for which he could be held criminally responsible, regardless of whether he
has previously been charged with or finally convicted of the crime or act . .
. .


Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2002). This statute
broadens the prior scope of admissible evidence at the punishment stage of trial beyond
the defendant's prior criminal record and general reputation and character. Young v.
State, 837 S.W.2d 185, 189 (Tex.App.--Amarillo), rev'd on other grounds, 843 S.W.2d 570
(1992). The fact that an individual chooses to wear a tattoo proclaiming himself the "King
of Death" may, within the purview of the statute, be relevant as evidence of his character.

 Furthermore, even prior to the adoption of the present statute broadening the
discretion of the trial judge in admitting evidence he deems relevant, the admission of
information contained within the identification portion of a pen packet was held admissible. 
In Jojola v. State, 624 S.W.2d 338 (Tex.App.--Eastland 1981, pet. ref'd), the defendant
complained of an entry under the "Scars and Marks" portion of the penitentiary fingerprint
record showing that he had needle tracks. His opinion was that the entry branded him as
a drug user and thereby constituted reference to an extraneous offense or offenses. In
overruling that contention, the appellate court found that the reference to "needle tracks"
did not necessarily allege an extraneous offense and was a legitimate part of the
identification records. Id. at 341. En route to that holding, the court noted that the State
made no mention of the marks in its remarks to the jury. Similarly, here, the reference to
appellant's tattoo was a legitimate part of the identification records and the State did not
refer to the tattoo in its argument. The trial court did not abuse its discretion in admitting
the evidence. Appellant's third issue is overruled.

 In summary, all of appellant's issues are overruled and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Chief Justice


Do not publish.



0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-even-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") eh1;
 mso-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") ef1;
 mso-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") f1;
 mso-first-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") fh1;
 mso-first-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-even-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") eh2;
 mso-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") h2;
 mso-even-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") ef2;
 mso-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") f2;
 mso-first-header:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") fh2;
 mso-first-footer:url("07-09-0125.cr\(2\)%20opinion_files/header.htm") ff2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-09-0125-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
25, 2010

 



 

JULIAN EDWARD PERALES,  

 

                                                                                         Appellant


v.

 

THE STATE OF TEXAS,  

 

                                                                                         Appellee

___________________________

 

FROM THE 181ST DISTRICT COURT OF POTTER
COUNTY;

 

NO. 50,635-B; HONORABLE JOHN B. BOARD,
PRESIDING

 



 

Memorandum
Opinion

 



 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Julian
Edward Perales appeals a judgment revoking his probation and adjudicating his
guilt of aggravated assault with a deadly weapon.  He originally pled guilty to the offense in
2005 and was placed on probation.  The
State filed a motion to adjudicate his guilt on May 2, 2008, and an amended
motion on March 11, 2009.  After a
hearing during which appellant pled true to four of the probation violations
alleged against him, the court found him guilty and sentenced him to ten years
imprisonment.  In challenging that
judgment, he argues that the trial court abused its discretion in failing to
hold a hearing on his motion for new trial and in denying him the opportunity
to secure counsel of his choice.  We
affirm the judgment. 

            Issues 1 & 2 - Hearing on Motion for New
Trial

            Appellant timely filed a motion for
new trial in which he asserted that, although he wished to retain counsel of
his own choosing for the adjudication proceeding, the bailiff made him sign a
document entitled Financial Information for Request for Court Appointed
Attorney and the trial court forced him to proceed with appointed counsel that
he did not request and with whom he had a fundamental disagreement over his
defense.  The motion was overruled by
operation of law. 

            A defendant
must present a motion for new trial to the trial court within ten days of
filing it.  Tex. R. App. P. 21.6.  The mere filing of a motion for new trial is
insufficient to satisfy this requirement. 
Stokes v. State, 277 S.W.3d
20, 21 (Tex. Crim. App. 2009). The requirement of presentment puts the trial
court on notice that the movant desires the trial court to take some action on
the motion.  Id.  Therefore, the movant
must meet the burden of showing actual delivery of the motion for new trial to
the trial court or otherwise bringing it to its attention.  Carranza
v. State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).  

            The record
before us is silent on presentment other than a certificate of service
indicating that a copy of the motion was delivered to the trial court.[1]  That alone is insufficient to show that the
trial court was aware of the motion and that appellant desired a hearing on
it.  Owens
v. State, 832 S.W.2d 109, 111-12 (Tex. App.Dallas 1992, no pet.); see also Oestrick v. State, 939 S.W.2d
232, 235 n.5 (Tex. App.Austin 1997, pet. refd) (stating that a self-serving
statement by defense counsel is insufficient evidence of presentment).  Although there can be different ways to prove
presentment, Stokes v. State, 277
S.W.3d at 24, we find nothing in the record indicating the judges signature or
notation on the motion or a proposed order, a docket sheet entry showing presentment,
the setting of a hearing date, or some other appropriate notation.  See
Gardner v. State, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009).  Appellant also fails to point us to any such
evidence in the record.  Because the trial court does not abuse its
discretion in failing to conduct a hearing when there is no evidence that the
motion was timely presented to the trial court, 
id., appellants first two
issues are overruled.

          Issues 3 & 4  Opportunity to Retain
Counsel

            In his next two issues, appellant
complains of the trial court depriving him of the opportunity to secure counsel
of his own choosing.  We note that
appellant neither complained of the fact he was represented by appointed
counsel during the adjudication hearing nor requested an opportunity to retain
counsel.  To preserve error, complaint
must be made to the trial court by a timely request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1). 
To be timely, an objection must be made at the earliest opportunity, Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002), or as soon as the ground becomes apparent.  Penry
v. State, 903 S.W.2d 715, 763 (Tex. Crim. App. 1995).  Appellant testified at the hearing and spoke
to the trial court.  He provides no
explanation of his failure to mention this matter at that time, and we do not
find any in the record.  The objection
thus was forfeited.  Courson v. State, 160 S.W.3d 125, 129 (Tex. App.Fort Worth 2005,
no pet.) (holding that an untimely objection forfeits the complaint).  For that reason, we overrule appellants
third and fourth issues as well.

            Accordingly,
the judgment of the trial court is affirmed.

 

                                                                                    Per
Curiam

 

Do
not publish. 

                                                                                       

 

            








 











[1]The
certificate does not indicate how delivery occurred.