**Royce Wayne ROYAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00013–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 18, 1997.

Decided March 26, 1997.

Rehearing Overruled April 29, 1997.

Dan K. Parchman, Mount Vernon, for appellant.

Martin E. Braddy, Assistant District Attorney, Sulphur Springs, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Royce Wayne Royal appeals his conviction for delivery of cocaine. Trial was to a jury. The jury set punishment at ninety-nine years' confinement. Royal brings three points of error, contending that 1) the evidence was legally insufficient to prove that he delivered cocaine; 2) the evidence was factually insufficient to prove that he delivered cocaine; and 3) the trial court erred by admitting evidence of extraneous offenses. We affirm.

The State's principal witness was Steven R. Morrell, a Franklin County deputy sheriff. On April 6, 1995, Morrell was working undercover with a drug informant named Norman Fountain. That evening, Fountain called Scott Shine and Angela Mohn to arrange a meeting at which Morrell was to purchase a half-ounce of cocaine from Shine. They arranged to meet at a detail shop in Mt. Vernon to consummate the sale. Once in the detail shop, Shine told Morrell that he did not yet have a half-ounce. Instead, Shine sold Morrell a forty-dollar "rock" of cocaine and promised to return in thirty minutes to sell a half-ounce. Around midnight, Shine and Mohn returned. Behind them, another vehicle, containing Royal and his nephew, Barry Royal, pulled into the parking lot. Shine instructed Morrell and Fountain to go inside the building. Once inside, Shine, Morrell, and Fountain started toward the back room. At that point, Royal entered the building, with his hands in his pockets. Once Royal reached the back room, he pulled his hand from his pocket and reached toward Shine. Shine then took something from his hand and handed it to Morrell. Shine did not have anything in his hand until Royal handed him something. Immediately after Royal handed something to Shine, Shine handed it to Morrell. The item turned out to be a rock of cocaine. Morrell never actually saw the object in Royal's hand.

After receiving the cocaine, Morrell paid Shine $900.00 in marked bills. Morrell then gave Shine another $50.00, at Shine's request. Morrell walked out behind the others. Once outside, Shine leaned into Royal's car window and starting talking to Barry Royal. Royce Royal got in the passenger's side of the car. Morrell gave a signal to officers hidden nearby, announced that he was a police officer, and, along with the other officers, arrested Shine, the Royals, and Mohn. After an extensive search, the marked bills were located underneath the passenger seat where Royce Royal had been sitting in his car.

Royal's testimony, corroborated by Shine and Barry Royal, was that Shine owed an $800.00 gambling debt to Barry Royal. Shine told the Royals to follow him to a place where he would get them the money. Royal testified that when he arrived at the detail shop, he saw Shine, Fountain, and Morrell enter the building. Because Barry Royal was becoming impatient, Royce Royal decided to enter the building to tell the others that Barry was ready to go. Once inside the building, Royal witnessed, but did not participate in, the drug deal. Shine never gave him the proceeds of the drug deal.

Shine testified that once he realized the police were coming, he reached over Barry Royal to drop the money "beside the seat." However, Barry Royal testified that he did not remember Shine dropping the money in the Royal car. He also testified that it was unlikely that Shine did so. Royce Royal testified that he did not notice Shine drop any money in the seat because he was paying attention to the police officers' guns.

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Teer v. State*, 923 S.W.2d 11, 17 (Tex.Crim.App. 1996). We do not disregard, realign, or weigh evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The trier of fact is the exclusive judge of the witnesses' credibility and the weight it gives their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984). The trier of fact may believe or disbelieve any portion of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

When reviewing the factual sufficiency of the evidence, we review all the evidence, but not in the light most favorable to the prosecution. We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

Royal's brief argues that the evidence is insufficient to show that he possessed the contraband. Possession, however, is not the issue in this case. Royal was charged with

delivery of cocaine, in violation of TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon Supp.1997). To "deliver" means "to transfer, actually or constructively, to another a controlled substance. . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992).

■ Royal argues that the evidence only supports a finding of a constructive transfer. We disagree. The evidence supports a finding that Royal, as a party, participated with Shine in an actual delivery of cocaine.

■ Royal's main argument is that the evidence is insufficient because Morrell did not actually see the cocaine as it passed from Royal to Shine. Essentially, Royal argues that the State cannot prove delivery by circumstantial evidence. We disagree. "[F]or purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Crim.App. 1981). The jury was entitled to believe Morrell's testimony, and there is sufficient circumstantial evidence to prove Royal's guilt as a party. It is no longer necessary in circumstantial evidence cases for the evidence to exclude every other reasonable hypothesis except guilt. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Crim.App.1991).

Royal also claims that the trial court erroneously allowed the State to present evidence of three prior convictions, entered upon guilty pleas, for delivery of a controlled substance. The convictions were introduced after the following exchange on cross-examination of Royal:

Q Isn't it true that you and Barry Royal supplied that cocaine, State's Exhibit 2–A, to Scott Shine but you wouldn't front it to him because you didn't trust him either?

A Sir, I am not a drug dealer. I can not furnish anyone with drugs.

■ Evidence of a prior conviction can be admitted to impeach a witness if the crime was a felony or involved moral turpitude and the court determines that the probative value of admitting the evidence outweighs the prejudicial effect. TEX.R.CRIM.EVID. 609(a). To be admissible under Rule 609(a), a conviction

must be final. *Ex parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Royal argues that evidence of his prior convictions was inadmissible because he testified that a new trial was granted in each of the cases. But an exception to Rule 609 applies when a witness makes statements concerning his past conduct suggesting that he has never been arrested, charged, or convicted of any offense. Where the witness creates a false impression of law abiding behavior, he "opens the door" on his otherwise irrelevant past criminal history, and opposing counsel may expose the falsehood. *Delk v. State,* 855 S.W.2d 700, 704 (Tex.Crim.App.1993). This exception is not limited to final convictions. *Prescott v. State,* 744 S.W.2d 128, 130–31 (Tex.Crim.App.1988). Because Royal created the impression that he was not a drug dealer and could not furnish drugs to anyone, the State was entitled to impeach him with evidence of prior nonfinal convictions for delivery of a controlled substance.

Royal contends that a party may not use a prior conviction to impeach a statement induced by that party's own cross-examination of a witness. *Shipman v. State,* 604 S.W.2d 182, 184–85 (Tex.Crim.App. [Panel Op.] 1980). This rule, however, does not bar the impeachment of every statement made by a witness on cross-examination. "To so hold would . . . be a free ticket for a defendant to offer outrageous self-flattering remarks in response to cross-examination without fear of the prosecutor being able to resort to proof of extraneous offenses directly connected to the particular self-flattering remarks." *Baxter v. State,* 645 S.W.2d 812, 816 (Tex.Crim. App.1983); *see also Martinez v. State,* 728 S.W.2d 360 (Tex.Crim.App.1987). Royal's statement was unsolicited. He could have merely answered "No" to the prosecutor's question.

■ Royal also contends that *Baxter v. State, supra,* is distinguishable because there, the extraneous offense evidence was brought in at the punishment stage of the trial rather than at the guilt-innocence stage, as is the case here. The rule in *Baxter v. State* is applicable also to extraneous evidence introduced at the guilt-innocence phase of the trial. *See Lopez v. State,* 928

S.W.2d 528 (Tex.Crim.App.1996); *see also Mills v. State,* 847 S.W.2d 453 (Tex.App.-Eastland 1993, pet. ref'd); *Burrow v. State,* 668 S.W.2d 441 (Tex.App.-El Paso 1984, no pet.).[1] The only requirement is that, if the "opening door" testimony is volunteered by the defendant on cross-examination, it must be volunteered without any prompting or maneuvering by the State. *Lopez v. State, supra.* There was no such prompting or maneuvering in this case.

For the reasons stated, the judgment is affirmed.

---

1. The opinions in these two cases do not explicitly show that the information was adduced at the guilt-innocence phase, but it can be inferred from the context.