NO. 07-01-0255-CR
NO. 07-01-0257-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 22, 2002

_____


WILLIAM ROBERT FORD, AKA WILLIAM LOGHRY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NOS. 41,419-E, 42,038-E; HONORABLE ABE LOPEZ, JUDGE

_____


Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In three issues, appellant William Robert Ford aka William Loghry challenges his convictions of aggravated assault and aggravated assault with a deadly weapon, as well as the resulting concurrent sentences of 40 years confinement in the Institutional Division of the Department of Criminal Justice. The cases were consolidated for jury trial, and the

punishment was also assessed by the jury. Finding no reversible error, we affirm the convictions.

In his three issues, appellant claims error on the part of the trial judge in 1) allowing a statement made by him while he was in a police vehicle into evidence, 2) not allowing him to cross-examine a State's witness with a misdemeanor offense after the State had opened the door, and 3) allowing certain tattoo markings contained in a penitentiary packet into evidence during the punishment phase that were not relevant and were highly prejudicial to him.

On October 11, 1999, shortly before midnight, appellant entered the Circus Room, a bar on Sixth Street in Amarillo and demanded that the bartender give him money from the cash register. Because appellant had been a patron, the bartender asked him if he was kidding. Appellant responded by holding a knife to the bartender's throat. Three other customers were in the bar and aided in subduing appellant, and one received some cuts from appellant's knife. During the scuffle, the bartender called the police. Upon their arrival, the police handcuffed appellant and put him in a police car. While the police were taking statements from the witnesses, appellant escaped, but was later apprehended again.

In his first issue, appellant complains of the admission into evidence of an oral statement made by him while he was being transported to the Potter County Jail. He argues the statement was made while he was arrested, handcuffed, and in the custody of

the police and that it was made prior to being informed of his constitutional rights or receiving Miranda warnings. This sequence of events, he contends, violated his constitutional rights and further, violated the requirements of article 38.22 of the Code of Criminal Procedure. In supporting this argument, he argues that it is established that the prosecution may not use statements stemming from custodial interrogation of a defendant unless procedural safeguards secure his right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Article 38.22 of the Code of Criminal Procedure provides that an oral statement made as a result of custodial interrogation may not be used against an accused unless an electronic recording is made, he has received a warning explaining his legal rights, and he has knowingly, intelligently, and voluntarily waived the rights described in the warning. Tex. Code Crim. Proc. Ann. art. 38.22 § 3 (Vernon Supp. 2002). However, nothing in the article precludes the admission of a statement that is *res gestae* of the arrest or the offense, a statement that does not stem from custodial interrogation, or a voluntary statement whether or not it is the result of custodial interrogation. *Id*. § 5 (Vernon 1979).

In responding to appellant's contentions, the State initially argues that no error was preserved for appellate review by the trial court ruling on a motion in limine and appellant did not obtain a trial court evidentiary ruling, either at the pretrial hearing or at trial. Furthermore, it argues, there was never a specific objection that the oral statement should not be admitted because of a violation of article 38.22. In that respect, we note that appellant filed a motion in limine with respect to any oral statements made by him on the

3

basis that any custodial statements made without constitutional warnings would be in violation of U.S. and Texas constitutional provisions. However, at the hearing on the motion, appellant made reference to article 38.22.

At the hearing, Police Officer Billy Heinson testified he arrested appellant and placed him in his patrol car. Appellant later escaped from the car, Officer Heinson recaptured him, and then delivered him to Officer Jordan. Heinson did not admonish appellant as to his constitutional rights, nor did he attempt to ask him any questions.

William Jordan, at the time of the hearing a former police officer, drove appellant to the Potter County Jail. He did not admonish appellant of his constitutional rights at that time. However, Jordan averred, appellant voluntarily said that a black man had threatened him and forced him to commit the robbery. At some point, Jordan asked, if appellant's story was true, why he did not go into the bar and call the police. Appellant's reply was that the man was waiting right outside the door and if appellant called the police, the man would have hurt his family and possibly burned down his house. After appellant was booked into jail, Jordan read appellant his rights and gave him an opportunity to make a written statement. However, at that time, appellant invoked his right to counsel and refused to make a statement. Jordan admitted that appellant was under arrest and handcuffed at the time he was transported to the jail.

At the conclusion of the hearing, the trial judge opined, "[t]hey are just spontaneous statements by the Defense [sic] - - by the Defendant. Mr. Schofield, if you're asking for a

4

ruling on that, I will rule they are admissible. He wasn't - - it was not being done under questioning. I mean . . . They will come in." In response to a question whether the motion in limine was denied, the court replied that it was. Later, during the trial, when Jordan was asked if appellant made any statements to him, appellant re-urged what he termed as his "objection that's been previously made to the Court at a prior hearing." Then, the following colloquy occurred at the bench:

> Mr. Schofield: I had objected to any oral statements made by the Defendant. He had previously testified that he was taking the defendant uh–to the jail, and the defendant said that there was a person that made him commit the offense of robbery. He was uh–you ruled that they were *res gestae*.
>
> The Court: Yeah, okay.
>
> Mr. Schofield: I just want to re-urge my Motion in Limine.
>
> The Court: Okay. It's overruled.

At the close of the evidence, appellant requested, and was granted, an instruction on the law of duress based upon the statement appellant made to Jordan.

As we have noted, the State argues that appellant did not make an evidentiary objection on the basis of article 38.22 or obtain a ruling from the trial court on that basis. However, appellant mentioned article 38.22 in the course of the pretrial hearing and, in addition to overruling the motion in limine, the court ruled the statement would be admissible. Thus, although the record is not completely clear, we will assume, *arguendo*, that an article 38.22 objection was made and the court ruled on it.

5

It is undisputed that appellant was in custody at the time of his oral statement and that no electronic recording was made of the statement. It is also undisputed that appellant had not been read his rights at the time he made the statement. Even so, there is nothing in the record to indicate that Jordan took any actions or said anything likely to elicit appellant's statement that he was forced to commit the robbery.

In *Longoria v. State*, 763 S.W.2d 597 (Tex.App.--Corpus Christi 1988, no pet.), a burglary case, the defendant argued the trial court erred in admitting three statements made by him at the time of his arrest and before any constitutional or statutory warnings had been given. In response to a police officer's question, the defendant stated that a box he was carrying contained groceries. However, the police officer noticed the box did not appear to contain groceries, and the defendant then volunteered that the box contained radios. When the officer told the defendant that he thought he, the defendant, was lying, he responded with a third statement, "[d]on't do this to me, man, don't do it." The court found that the second and third statements were made voluntarily and not as a result of interrogation. In this instance, appellant's first statement asserting that he was forced to commit the offense was clearly spontaneous and voluntarily made. Appellant's second statement is similar in nature to that before the court in *Longoria* and, in both cases, the officer's skeptical remark that provoked the responses did not transgress constitutional or statutory bounds.

6

With regard to the second statement, even assuming arguendo that Jordan's question was likely to provoke an incriminating response, the statement was merely cumulative of the first statement, which was clearly admissible. Hence, there was no material harm to appellant. Further, even if admitting the second statement was erroneous, a criminal judgment need not be reversed if, beyond a reasonable doubt, the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2. *See also Manley v. State*, 28 S.W.3d 170, 176-77 (Tex.App.--Texarkana 2000, pet. ref'd). In this case, several witnesses testified that appellant had been a customer of the bar. Two witnesses positively identified appellant as the robber and he was also held down by several of the patrons until the police arrived. The admission of the second statement, even if it was error, did not contribute to appellant's conviction or punishment. Appellant's first issue is overruled.

In his second issue, appellant claims the trial court should have allowed him to use a misdemeanor offense in cross-examining the State's witness Eskippa Bluejacket. Bluejacket was one of the witnesses who identified appellant as the robber and helped detain appellant until the police arrived. In its direct examination, the State had asked Bluejacket if he was armed when he tried to take the knife away from appellant. Bluejacket denied that he was armed at the time. During cross-examination, the following colloquy occurred at the bench:

> Mr. Schofield: I would normally -- normally blurt this, but in that we have already gone into this in the other proceeding, I assumed the Court would

7

get a little upset with me if I did. This person has a previous conviction for unlawfully carrying a concealed weapon. I do know that is not a crime of moral turpitude. However, the State has asked the question: Were you uh -- carrying a concealed weapon? I intend to ask him -- well, they opened the door.

Mr. Coyle: I'm sorry. Go ahead.

Mr. Schofield: I intend to ask him the question: Have you not carried -- have you not been convicted of carrying a concealed weapon in the past?

The Court: Okay.

Mr. Coyle: Just -- if I can be heard on this.

The Court: Uh-huh.

Mr. Coyle: First of all, his conviction is unlawfully carrying a weapon, not carrying a concealed weapon. Secondly, uh -- what's the date on that? Okay. That occurred in 1996. I asked the witness, were you armed on the night that this happened? I didn't say, were you carrying a concealed weapon, and I didn't say have you ever carried a gun? I said, were you armed when you went after this guy. That does not open the door to any prior convictions this man has for a misdemeanor UCW. If I said, you know, are you in the habit of carrying or blah, blah, blah, you know, that might open the door, but I didn't do that.

The Court: I don't think that I would let that come in, Mr. Schofield.

Mr. Schofield: Your Honor, just to preserve my particular Bill of Review issue, if I may have that as a Bill of Review exhibit.

Mr. Coyle: Yeah, we have no objection for that purpose.

The Court: Okay.

Mr. Coyle: And we will even stipulate that that's him. You know, just for any appellate purposes. Okay.

The Court: All right.

8

Mr. Schofield: I would tender that question to -- that I would be asking that question to the -- to the witness at this point, have you been convicted of a concealed weapon on those specific dates. Well, under that cause number.

The Court: This is not a concealed weapon.

The Court: I mean convicted of unlawfully carrying a weapon.

The Court: All right. Uh -- I will deny your request. Sustain the State's objection that cannot come in, but I will receive this for part of your bill.

Mr. Schofield: Okay.

The Court: Okay.

Appellant recognizes that Rule 609 of the Rules of Evidence provides that a conviction may only be used to attack the credibility of a witness if the crime was a felony or involved moral turpitude and the court determines its probative value outweighs its prejudicial effect. *See* Tex. R. Evid. 609(a). He also admits that the crime he seeks to use for impeachment purposes was neither a felony nor an offense involving moral turpitude. However, he contends, because of the nature of the State's question, he had a right to clarify any "false impression" left with the jury by the question.

If a witness creates a false impression of a past criminal history, he has opened the door to otherwise irrelevant prior conviction evidence and opposing counsel may expose any falsehoods. *Otero v. State*, 988 S.W.2d 457, 458-59 (Tex.App.--Houston [1st Dist.] 1999, pet. ref'd); *Royal v. State*, 944 S.W.2d 33, 36 (Tex.App.--Texarkana 1997, pet. ref'd). However, this exception is narrowly construed and, to open the door to the use of such evidence, the witness must do more than merely imply he abides by the law but must

9

convey the impression that he has never committed a crime.  *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Lewis v. State*, 933 S.W.2d 172, 179 (Tex.App.--Corpus Christi 1996, pet. ref'd). The rebuttal evidence may never exceed the scope of the question posed or the answer given.  *Vetero v. State*, 8 S.W.3d 805, 815 (Tex.App.--Waco 2000, pet. ref'd).

Here, Bluejacket's answer that he was not armed at the time of the incident, without further elaboration, was not sufficient to leave the impression that he never carried a weapon either legally or illegally, that he was opposed to the use of weapons, or that he had never committed a crime.  Thus, the State had not opened the door to the use of the conviction on cross-examination.  The trial court did not err in refusing to allow appellant to use the conviction.  Appellant's second issue is overruled.

In his third and final issue, appellant challenges the admission during the punishment phase of extraneous material contained in a penitentiary packet that certified a prior conviction of appellant.  The material in question was on the last page of State's Exhibit No. 8 under the "Scars & Marks" portion of the fingerprint record.  It stated that appellant had an identifying tattoo containing the phrase "King of Death."  At trial, appellant unsuccessfully complained that the tattoo information was not necessary to identify him with that particular penitentiary packet and was a type of surplusage that was prejudicial enough to deny him due process and a fair and impartial trial.  In this appeal,

he also complains that the reference is double hearsay and indicates a lack of trustworthiness.

In supporting his proposition, appellant cites and relies on an explication in *Moore v. State*, 826 S.W.2d 775 (Tex.App.--Houston [14th Dist.] 1992, pet. ref'd). In that case, the court opined that the "threshold test of admissibility of any extraneous offense or transaction is that it be relevant to a material issue in the case and that the probative value of the evidence outweigh its inflammatory or prejudicial potential." *Id.* at 777. He reasons that under that test, the words "King of Death" on the tattoo were not relevant and only served to inflame the minds of the jury.

At trial, appellant did not raise a hearsay objection, nor did he raise a lack of reliability objection. By not doing so, he has failed to preserve those questions for appellate review. *Gauldin v. State*, 683 S.W.2d 411, 413 (Tex.Crim.App. 1984), *overruled on other grounds by State v. Guzman*, 959 S.W.2d 631 (Tex.Crim.App. 1998). However, giving a liberal construction to appellant's trial objection, it can be said that his objections were sufficient to raise a relevancy question and whether the evidence's prejudicial value exceeded its probative value.

Relevant evidence is defined as any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401.

11

However, even if relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403.

In considering this question, we note that article 37.07 of the Code of Criminal Procedure provides:

> Sec. 3.  Evidence of prior criminal record in all criminal cases after a finding of guilty:
>
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the Court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 403, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act . . . .

Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2002).  This statute broadens the prior scope of admissible evidence at the punishment stage of trial beyond the defendant's prior criminal record and general reputation and character.  *Young v. State*, 837 S.W.2d 185, 189 (Tex.App.--Amarillo), *rev'd on other grounds*, 843 S.W.2d 570 (1992).  The fact that an individual chooses to wear a tattoo proclaiming himself the "King of Death" may, within the purview of the statute, be relevant as evidence of his character.

Furthermore, even prior to the adoption of the present statute broadening the discretion of the trial judge in admitting evidence he deems relevant, the admission of information contained within the identification portion of a pen packet was held admissible. In *Jojola v. State*, 624 S.W.2d 338 (Tex.App.--Eastland 1981, pet. ref'd), the defendant complained of an entry under the "Scars and Marks" portion of the penitentiary fingerprint record showing that he had needle tracks. His opinion was that the entry branded him as a drug user and thereby constituted reference to an extraneous offense or offenses. In overruling that contention, the appellate court found that the reference to "needle tracks" did not necessarily allege an extraneous offense and was a legitimate part of the identification records. *Id*. at 341. En route to that holding, the court noted that the State made no mention of the marks in its remarks to the jury. Similarly, here, the reference to appellant's tattoo was a legitimate part of the identification records and the State did not refer to the tattoo in its argument. The trial court did not abuse its discretion in admitting the evidence. Appellant's third issue is overruled.

In summary, all of appellant's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Do not publish.

13